JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 10-05186 MMM (JEMx) | Date | October 18, 2010 |
|---|---|---|---|

| Title | *Tejada v. Sugar Foods Corp.* |
|---|---|

| Present: The Honorable | MARGARET M. MORROW | |
|---|---|---|
| ANEL HUERTA | | N/A |
| Deputy Clerk | | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None | None |

**Proceedings:** **Order Granting Plaintiff's Motion to Remand**

On April 26, 2010, Julio Tejada filed this action in Los Angeles Superior Court against his former employer, Sugar Foods Corporation ("Sugar Foods").[1] Sugar Foods removed the action to this court on July 15, 2010, invoking the court's diversity jurisdiction. On August 16, 2010, Tejada filed a motion to remand the action to state court.[2] Sugar Foods opposes plaintiff's motion.[3]

### I. FACTUAL BACKGROUND

Sugar Foods is incorporated in New York and has its principal place of business in that state.[4] Tejada is a citizen of California.[5] On May 15, 2009, Sugar Foods sent Tejada a

---

[1]Notice of Removal, Exh. 1 (Complaint), Docket No. 1 (July 15, 2010).

[2]Motion to Remand Case ("Motion"), Docket No. 5 (Aug. 18, 2010).

[3]Opposition to Motion to Remand Case ("Opp."), Docket No. 6 (Oct. 4, 2010).

[4]Notice of Removal, ¶ 7.

[5]*Id.*, ¶ 6.

termination letter, advising that his employment would be terminated on July 9, 2009, the date his temporary disability leave of absence expired.[6] At the time of his dismissal, plaintiff was earning $8.50 per hour.[7]

Tejada alleges he was illegally fired because he was unable to return to work.[8] He also asserts that two Sugar Foods employees willfully and fraudulently concealed from him that Sugar Foods was acting illegally for the purpose of depriving him of his employment benefits.[9] Tejada'she complaint pleads four causes of action under California law: (1) breach of the covenant of good faith and fair dealing; (2) disability discrimination in violation of California's Fair Employment and Housing Act ("FEHA"); (3) wrongful termination; and (4) failure to provide a reasonable accommodation in violation of FEHA.[10] Tejada seeks damages for lost wages, benefits, medical expenses, and emotional distress. In addition, he seeks injunctive relief, punitive damages, attorneys' fees, and costs.[11] The complaint does not state the amount of damages sought.[12]

The parties dispute whether Tejada properly served Sugar Foods prior to removal. On May 4, 2010, a registered process server attempted to serve the summons and complaint on Sugar Foods at its place of business.[13] In his proof of service, the process server declares, under penalty of perjury, that he served the summons and complaint on "James Alarcon"; he describes Alarcon as a "Hispanic male, 45 years old, 5'9", 180 pounds, black hair, brown eyes."[14] The proof of service states that the process server also mailed a copy of the summons and complaint to Stephen Odell, Sugar Foods's agent for service of process the same day, in

---

[6]Complaint, ¶ 15.

[7]*Id.*, ¶ 3.

[8]*Id.*, ¶¶ 13-16.

[9]*Id.*, ¶¶ 13-16, 41. The employees are Brenda LNU, who works in Sugar Foods' human resources department, and Tejada's supervisor, Ronald Grijalva. (Complaint, ¶¶ 14, 19).

[10]*Id.*, ¶¶ 23-61.

[11]*Id.* at 10.

[12]*Id.*, ¶ 6.

[13]Motion at 3, Exh. B (proof of service).

[14]*Id.*

compliance with California Code of Civil Procedure § 416.10.[15] Sugar Foods asserts that it did not receive service by either means.[16]

Thereafter, on May 17, 2010, Tejeda served a notice of case management conference on Sugar Foods.[17] Sugar Foods contends that it received the notice on May 20, 2010.[18] Thereafter, "in June 2010," Sugar Foods' attorney obtained a copy of the summons and complaint from the state court website,[19] and sent Tejeda a letter, dated June 14, 2010, stating that Sugar Foods had not been served.[20] The attorney offered to accept service on Sugar Foods' behalf. Tejeda effectuated service by this method on July 8, 2010.[21]

Tejeda contends that service was proper and effective on May 4, 2010, that Sugar Foods had notice of removability on May 4, and that its July 15, 2010 removal was therefore untimely.[22] Alternatively, he argues that Sugar Foods had actual notice of the summons and complaint, at the latest, on June 14, 2010, when its counsel notified Tejeda that it had not been served.[23] Sugar Foods denies that service was properly effected on May 4, 2010, and asserts that Alarcon is taller (6'1") and heavier (approximately 250 pounds) than the person described in the proof of service.[24] Alarcon has filed a declaration stating that he had not seen the summons and complaint prior to being shown the documents by defense counsel.[25] Stephen Odell, defendant's agent for service of process, has also filed a declaration, asserting that he

---

[15]*Id.*

[16]Opp. at 2-3.

[17]*Id.* at 3; Exh. C (Notice of Case Management Conference).

[18]Opp. at 2, Exh. 2 (Declaration of Ronald Grijalva ("Grijalva Decl."), ¶ 2).

[19]*Id.* at 3; Grijalva Decl., ¶ 3.

[20]Opp. at 3, Exh. 3 (Declaration of Stephen Odell ("Odell Decl."), ¶¶ 3-4).

[21]*Id.* at 3, Exh. 4 (Declaration of Michael Kun ("Kun Decl."), ¶¶ 3-4, Exh. A (letter).

[22]Motion at 4-5.

[23]*Id.* at 5.

[24]Opp. at 3; Declaration of James Alarcon ("Alarcon Decl."), ¶¶ 1-3.

[25]*Id.*

did not receive a copy of the summons and complaint by mail.[26] There is no dispute that Sugar Foods had obtained a copy of the summons and complaint, and had actual notice of the action, in "early June," or, at the latest, by June 14, 2010.[27]

Plaintiff's motion is currently on calendar for hearing on October 25, 2010. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds the matter appropriate for decision without oral argument and vacates the hearing scheduled for October 25, 2010.

## II. DISCUSSION

### A. Legal Standards Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states. See 28 U.S.C. §§ 1441(a), (b). Only state court actions that could originally have been filed in federal court may be removed. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988)

Parties seeking to remove must comply with certain procedural mandates. Among these is a requirement that a notice of removal be filed within thirty days after service of the summons and complaint. 28 U.S.C. § 1446(b); see *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999). The statute provides for a renewed thirty-day removal period if the original complaint is not removable. This period commences on the defendant's receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. . . ." 28 U.S.C. § 1446(b).

### B. Legal Standard Governing Service of Process Prior to Removal

"The issue of the sufficiency of service of process prior to removal is strictly a state

---

[26]Opp. at 3; Odell Decl., ¶¶ 2-3.

[27]Opp. at 3; Grijalva Decl., ¶ 3.

law issue." *Lee v. City of Beaumont*, 12 F.3d 933, 936-37 (9th Cir. 1993); see also *Norsyn, Inc. v. Desai*, 351 F.3d 825, 829 (8th Cir. 2003) ("Norsyn points to January 30, 2002, as the date on which proper service was made on Defendants. It was on this date that Defendants received a copy of Norsyn's complaint, and were thus given actual notice of the pendency of the action. Since this event occurred prior to removal, we must determine whether it constituted sufficient service in accordance with the law of the jurisdiction in which the action was filed").

### C.     Service of Process on a Corporation Under California Law

California Code of Civil Procedure § 415.20 provides that "[i]n lieu of personal delivery of a copy of the summons and complaint to the [persons authorized to receive service for a corporation, dissolved corporation, association, or unincorporated association], a summons may be served by" substituted service. CAL. CODE CIV. PROC. § 415.20(a). Substituted service is effected by leaving a copy of the summons and complaint "during usual office hours" at the corporation's office "with the person who is apparently in charge thereof," and "[t]hereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." *Id*. The statute provides that "[s]ervice of summons in this manner is deemed complete on the 10th day after the mailing." *Id*.

"'The filing of a proof of service creates a rebuttable presumption that . . . service was proper.'" *Hope v. Otis Elevator Co.*, 389 F.Supp.2d 1235, 1242 (E.D. Cal. 2005) (citing *Floveyor Int'l, Ltd. v. Super. Ct.*, 59 Cal.App.4th 789, 795 (1997)). "[U]nder Ninth Circuit law, the prima facie case [of valid service] may 'be overcome only by strong and convincing evidence.'" *Saxon Mortg. Services, Inc. v. Hillery*, No. C-08-4357 EMC, 2008 WL 5170180, *2 (N.D. Cal. Dec. 9, 2008) (discussing California rules for service of process and citing *SEC v. Internet Solutions for Business, Inc.*, 509 F.3d 1161, 1167 (9th Cir. 2007) ("We also hold that a signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence")). citing *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993), and *Hicklin v. Edwards*, 226 F.2d 410, 414 (8th Cir. 1955))).

### D.     Whether Sugar Foods Timely Removed the Action to Federal Court

The proof of service filed by Tejada's registered process server creates a presumption of valid service that can be rebutted only by strong and convincing evidence. See *Internet Solutions for Business*, 509 F.3d at 1167; *Hope*, 389 F.Supp.2d at 1242. Sugar Foods contends that Tejeda did not effect service on May 4, 2010, because the proof of service inaccurately describes Alarcon's physical appearance. It also proffers the declarations of Alarcon and Odell in an effort to rebut the presumption of valid service.

5

These declarations do not meet Sugar Foods' burden of adducing strong and convincing evidence that service was not effected. Sugar Foods does not contest the validity of the addresses reflected in the proof of service. Additionally, although James Alarcon states that he has "never seen" the summons and complaint in this matter, he does not assert that he was not served with legal papers on May 4, 2010. It is, of course, entirely possible that the documents were in an envelope that was served on Alarcon and that he did not open the envelope before delivering it to the human resources department. See *Saxon Mortg. Services, Inc.*, 2008 WL 5170180 at *3 ("The Court finds that Ms. Hillery has failed to provide strong and convincing evidence that service was not proper. In so finding, the Court acknowledges the declarations provided by Ms. Hillery and her grandson, Tyrone Thames. However, those declarations are not enough to overcome the prima facie case established by Plaintiffs. For example, even if Mr. Thames was not personally served with the summons and complaint, and even if he found the papers on Ms. Hillery's doorstep, that does not mean that there was not another member of the household who did receive the papers and who then left them on the doorstep. Defendants have not provided any evidence indicating that the only occupants of the household are Ms. Hillery and her grandson"); cf. *Lassiter v. Coxcom, Inc.*, No. 08-CV-1561-H (CAB), 2008 WL 4646334, *4 (S.D. Cal. Oct. 20, 2008) ("William Sullivan . . . avers that he personally served Ms. DeGeorge with a copy of the LWDA letter, a summons, and a complaint on June 27, 2008. . . . Defendant contends that Mr. Sullivan never served the summons and complaint on Lawyers Incorporating Service, and thus the thirty day period for removal was not triggered on June 27, 2008. . . . In support of its position that it has never been properly served, Defendant has submitted declarations from several LIS employees . . . [who] all aver that they were working on June 27, 2008, but have no independent recollection of receiving or handling documents served on Coxcom. In light of the declarations and exhibits submitted by the parties, the Court concludes that Plaintiff has met his burden of proving service of process by a preponderance of the evidence. . . . William Sullivan, a licensed California attorney, declares under penalty of perjury that he personally served Defendant. Defendant's declarations from LIS employees working on June 27, 2008, do not directly contradict the proof of service or Mr. Sullivan's declaration, as no employee remembers receiving or handling the specific documents served by Plaintiff").

Sugar Foods, of course, not only does not deny that it has an employee by the name of James Alarcon, but has submitted Alarcon's declaration, who states that he has in the past accepted service for the corporation.[28] The fact that a registered process server, who has no interest in the action or the parties, knew and correctly cited in his proof of service the name of a Sugar Foods employee who is apparently employed in a capacity in which he sometimes accepts service of process for the corporation strongly suggests the validity of the service. This conclusion is not undermined by the fact that the process server inaccurately described Alarcon; given the inherent difficulties in judging height and weight accurately, this does not,

---

[28]Alarcon Decl., ¶ 3.

6

by itself, constitute strong and convincing evidence that the proof of service is inaccurate. See *Harry and David v. Pathak*, Civ. No. 09-3013-CL, 2009 WL 2579136, *5 (D. Or. Aug. 19, 2009) (rejecting defendant's reliance on "discrepancies in Plaintiff's Proof of Service," such as his argument "that no one knocked on his door, no one of the description that Gonzalez gave . . . lives at his address, and there is no 'White Caucasian' at his residence" as "convincing evidence"). Cf. *Abreu-Guzman v. Ford*, 241 F.3d 69, 74 (1st Cir. 2001) ("The description of 'Junior' given by the informant was 'a black, light skinned Hispanic male, approximately 6'0" to 6'2" in height, weighing approximately 175 to 180 pounds, black hair, clean shaven [and] 33 to 35 (years of age).' At the time of his arrest, Abreu was described as a 'black Puerto Rican male,' 5'10" in height, weighing 202 pounds, and 25 years old. Where, as here, a physical description closely resembles an individual, some discrepancies in the description do not undermine the reasonableness of officers' belief that an arrestee was the person named in a warrant," citing *Rodriguez v. United States*, 54 F.3d 41, 46 (1st Cir. 1995) (three inch discrepancy in height and twenty pound difference in weight was insufficient to render officers' reliance on physical description in effecting an arrest unreasonable)).

As respects the mailing of the summons and complaint to Odell, under California law, a "letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail." *Dill v. Berquist Constr. Co.*, 24 Cal.App.4th 1426, 1442 (1994) (citing CAL. EVID. CODE § 641);[29] *Bonzer v. City of Huntington Park*, 20 Cal.App.4th 1474, 1479 (1993) ("Pursuant to Evidence Code section 641 ('A letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail') th[e] declaration [accompanying the proof of service] created a rebuttable presumption the notice had been received in the ordinary course of mail"); see also *In re Marcos G.*, 182 Cal.App.4th 369, 386-87 (2010) ("Lack of a signed return receipt is not proof that [defendant] did not receive a notice; Evidence Code section 641 provides a presumption that letters that are correctly addressed and properly mailed have been received in the ordinary course of mail"). As noted, Sugar Foods does not contend that the proof of service recites the incorrect name of its agent for service of process or an incorrect mailing address. Compare *Dill*, 24 Cal.App.4th at 1442 ("Dill also relies upon the rule that '[a] letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail.' That reliance is misplaced, because the record here does not establish that the envelopes were correctly addressed" (citation omitted)).

---

[29]"Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

Although Odell states that he never received the summons and complaint, he provides no information concerning the procedures for receipt and opening of mail in his office. Odell is the Chief Executive Office of Sugar Foods, and presumably has assistants who open and prepare his mail for review. Odell does not detail the company's policies with respect to receipt of legal process; he does not state, for example, that all such matters would be presented to him for his review as opposed to being forwarded automatically to others in the corporation. Compare *Bonzer*, 20 Cal.App.4th at 1479 (declarations submitted addressed the procedures used in the office of a Chief of Police for opening mail as well as the immediate routing of legal documents to the Chief Administrative Officer's office). The court thus concludes that Sugar Foods has failed to adduce strong and convincing evidence rebutting the presumption of proper service by mail.

Finally, there is no dispute that Sugar Foods had actual notice of this action on or before June 14, 2010, and did not remove until more than thirty days later. California courts liberally construe statutes governing service of process and hold that service that is technically deficient will be deemed effective if defendant has actual notice of the pendency of the action. See *Team Enterprises, LLC v. Western Inv. Real Estate Trust*, No. CV F 08-1050 LJO SMS, 2008 WL 4367560, *3 (E.D. Cal. Sept. 23, 2008) ("[California's] statutory requirements are construed to uphold jurisdiction, rather than defeat it. As long as the defendant receives actual notice of the lawsuit, substantial compliance with the Code provisions governing service of summons will generally be held sufficient," citing *Pasadena Medi-Center Associates v. Superior Court*, 9 Cal.3d 773, 778 (1973) (stating that statute governing service are to be liberally construed)); *Hearn v. Howard*, 177 Cal.App.4th 1193, 1201 (2009) ("Statutes governing substitute service shall be 'liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant,'" quoting *Ellard v. Conway*, 94 Cal.App.4th 540, 544 (2001)); *Summers v. McClanahan*, 140 Cal.App.4th 403, 408 (2006) (discussing the "liberal construction" of California's service of process law); *Gibble v. Car-Lene Research, Inc.*, 67 Cal.App.4th 295, 313 (1998) ("It is well settled that strict compliance with statutes governing service of process is not required. Rather, in deciding whether service was valid, the statutory provisions regarding service of process should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant").[30]

---

[30]At least one federal court discussing federal service of process rules deemed service proper where the affidavit accompanying the proof of service misidentified the person served in some respects, but defendant received actual notice of the pendency of the action. See *Dow v. Jones*, 232 F.Supp.2d 491, 497 (D. Md. 2002) ("Even if the affidavit of service misidentifies Jones in some respect, Jones had actual notice of this action and thus any such oversight in the affidavit does not invalidate the service of process"). Rule 4 of the Federal Rules of Civil Procedure, like California rules governing service of process, are liberally construed where defendant receives actual notice of the pendency of the action. *Id.* ("[W]hen

Application of this rule does not conflict with *Murphy Bros.*' direction that the time for removal begin to run only upon effective service of the summons and complaint. Rather, it addresses whether a finding of formal service is appropriate under state law. See, e.g., *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 307 F.Supp.2d 190, 195-96 (D. Mass. 2004) (noting that "it has long been the rule in Arizona that technical defects in a summons will not vitiate the proceedings so long as a litigant is not misled" and concluding that service of a summons that misnamed a defendant triggered the thirty day removal window under § 1446(b)); *Wolfe v. Green*, 660 F.Supp.2d 738, 749 (S.D.W.Va. 2009) ("This is not to say that technically defective service will never trigger the thirty day consent [to removal] period. The question is whether service effected while the case is pending in state court, though technically defective, would suffice under state law"). Here, the service Tejeda effected technically complied with the requirements of Code of Civil Procedure § 415.20. The fact that the proof of service inaccurately described James Alarcon or that a letter properly address to Odell did not personally reach him within the corporation are deficiencies that are, at worst, technical. Consequently, the court concludes that, even if technically deficient, Sugar Foods was effectively served under California law on May 4, 2010.

Because the corporation removed the action more than thirty days after this date, the removal was untimely under § 1446(b).[31]

### III. CONCLUSION

For the reasons stated, plaintiff's motion is granted. The court directs the clerk to remand the case to Los Angeles Superior Court forthwith.

---

the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction. When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process," citing *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)).

[31]Because the court finds that removal was untimely, the court need not address Tejada's alternate argument that the amount in controversy does not exceed $75,000.